## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL WERNER,<br><br>         Plaintiff,<br><br>    vs.<br><br>SGT. POBORSKY,<br><br>         Defendant. | )<br>)<br>)<br>)<br>)   Civil Action No. 3:23-cv-39<br>)   Judge Stephanie L. Haines<br>)<br>)<br>)<br>)<br>) |

### ORDER AND FINDINGS ON DAMAGES

This is a civil rights case brought under 42 U.S.C. § 1983 by Daniel Werner ("Plaintiff"), an inmate currently incarcerated at State Correctional Institution at Greene ("SCI-Greene"). In his Complaint (ECF No. 8), Plaintiff alleges that on February 13, 2023, while he was incarcerated at SCI-Houtzdale, Sergeant Stephen Paul Poborsky ("Defendant Poborsky") engaged in excessive force by assaulting and choking him in violation of the Eighth Amendment.[1] Plaintiff's Complaint requested compensatory damages against Defendant Poborsky in the amount of $300,000 as well as punitive damages of $300,000. ECF No. 8, p. 16. This matter was referred to Magistrate Judge Kezia O.L. Taylor for proceedings in accordance with the Federal Magistrates Act, 28 U.S. C. § 636, and Local Civil Rule 72.D.[2]

The record shows that Defendant Poborsky was personally served with the Complaint and Summons on August 19, 2024 (ECF No. 79). Although his response was due on September 9,

---

[1] In addition to Defendant Poborsky, Plaintiff's Complaint initially named as Defendants Correctional Officer Jacobs, Correctional Officer Myers and Medical Nurse Brittany. Magistrate Judge Lisa Lenihan issued an order granting the voluntary dismissal of Jacobs on September 26, 2023 (ECF No. 29), and Magistrate Judge Kezia O.L. Taylor issued an order granting the voluntary dismissal of Defendants Myers and Brittany on June 11, 2024 (ECF No. 68).

[2] This matter was first referred to Magistrate Judge Lenihan. The matter was later reassigned to Magistrate Judge Cynthia Eddy on November 2, 2023, before it was ultimately reassigned to Magistrate Judge Taylor for proceedings on January 3, 2024.

2024, Defendant Poborsky never responded to the Complaint.  Accordingly, on October 7, 2024, Plaintiff filed a motion for default judgment (ECF No. 84), along with a "declaration of entry of default" (ECF No. 85).   On October 29, 2024, a Clerk's Entry of Default was entered (ECF No. 89).   On December 5, 2024, Plaintiff filed a second motion for default judgment (ECF No. 94). On March 26, 2025, the Court granted the Motion for Default Judgment (ECF No. 100) and set a date for a damages hearing by zoom. The hearing was conducted on May 21, 2025 (ECF No. 102). Plaintiff appeared *pro se*, but Defendant Poborsky did not appear nor was any appearance entered on his behalf. ECF No. 102. Plaintiff presented the Court with information about the complained-of incident and its aftermath.  The matter was taken under advisement for the Court to issue its ruling as to the appropriate amount of damages due to Plaintiff.  Since that time Plaintiff filed a Motion to Appoint Counsel (ECF No. 108).

## I.    Factual Background[3]

In his Complaint, Plaintiff alleged that on February 13, 2023, he was escorted by correctional officers to a triage room to have an injury examined that had occurred three days prior. ECF No. 8, p. 13.  Plaintiff and the escorting officers entered the triage room to see the attending nurse; the escorting officers remained in the room. *Id.*  At the same time Plaintiff began to explain to the nurse what happened, Defendant Poborsky entered the room. *Id.*  Defendant Poborsky began threatening Plaintiff, asking him if he "really want[ed] to make false allegations." *Id.*[4]  Defendant Poborsky then put his hand to Plaintiff's throat and pushed him down onto the triage bed. *Id.* at p.14.  Plaintiff was handcuffed with a belt restraint.  After the incident he was removed from the triage room and returned to his cell without treatment. *Id.*  Defendant Poborsky threatened Plaintiff

---

[3] Upon the entry of default, this Court must accept all factual allegations in the Complaint as true, except those relating to the amount of damages. *See DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005).
[4] Plaintiff believes these threats stemmed from a grievance he had filed earlier regarding a prior assault. ECF No. 8, p. 13.

2

throughout the entire incident until Plaintiff was returned to his cell. *Id.* Defendant Poborsky was relieved of his position following these events. *Id.*; ECF No. 100.

Plaintiff alleged that Defendant Poborsky violated his Eighth Amendment rights. ECF No. 8, pp. 13–14. Plaintiff's Complaint requested compensatory damages against Defendant Poborsky in the amount of $300,000 as well as punitive damages of $300,000. ECF No. 8, p. 16. At the same time, in Plaintiff's Motion for Default Judgment, Plaintiff requested damages totaling $300,135.18; he also requested that this amount be increased by an additional $25,000 for each day that passed after January 20, 2025. ECF No. 94, pp. 1-3;[5] ECF No. 8, p. 16.

After careful review of Plaintiff's Complaint, (ECF No. 8), the testimony presented at the May 21st damages hearing, and the evidence of record, the Court, for reasons more fully discussed below, will enter default judgment against Defendant Poborsky in the amount of $5,000 in compensatory damages and $10,000 in punitive damages.

I.      **Legal Standard**

Federal Rule of Civil Procedure 55 provides a two-step process for obtaining a default judgment. *See* Fed. R. Civ. P. 55. The first step is an entry of default. *See id.* The entry of default is a ministerial task performed by the Clerk of Court. No motion is needed, and no order is involved. Rather, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).

After obtaining a default, the party may request the entry of default judgment from the Clerk, "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by

---

[5] The $300,135.18 requested in Plaintiff's Motion for Default Judgment incorporates a request for $300,000 in monetary damages as well as the total of an attached "accounting" for what appear to be costs. ECF No. 94, pp. 1-2.

computation[,]" but "[i]n all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(1)-(2).

## II.    Analysis

In the instant case, the Clerk has entered default against Defendant Poborsky, (ECF No. 89), and the Court has issued a Memorandum Order granting Plaintiff's Motion for Default Judgment in the amount to be determined by the Court following the May 21, 2025, damages hearing (ECF No. 100).[6]  At the May 21, 2025, damages hearing, Plaintiff testified that he is claiming $300,000 in damages. TX, p. 4, ¶¶ 1-2.[7]  He stated that Defendant Porborsky entered the triage room and strangled him causing him to not be able to breathe. TX, p. 5, ¶¶ 1-2.  At the time he was handcuffed to a belt. TX, p. 8, ¶¶ 8-10.  Plaintiff believes that Defendant Porborsky strangled him against the table for 10 seconds, until 2 other correctional officers stopped him. TX, p. 8, ¶¶ 12-17, 23-24.

Plaintiff filed a criminal complaint against Defendant Porborsky for the attack and he was fired from SCI-Houtzdale. TX, p. 5, ¶¶ 3-8.  Plaintiff remained incarcerated at SCI-Houtzdale for another year after the incident and the other correctional officers at the prison harassed him for getting Defendant Porborsky fired until Plaintiff was eventually transferred to SCI-Greene. TX, p. 5, ¶¶ 10-14; p. 21, ¶¶ 9-24.  They would say things like, "I'm next to choke you out." TX, p. 21, ¶¶ 12-24.

Plaintiff stated that because of these events, he has nightmares about Defendant Porborsky putting his hands around Plaintiff's neck and choking him and after these nightmares he has ringing in his ears. TX, p. 5, ¶¶ 15-18; p. 12, ¶¶ 8-11.  Plaintiff takes medication to help him sleep but

---

[6] As Plaintiff's claim is not for a sum certain or sum that can be made certain by computation, the entry of a default judgment is left primarily to the discretion of the district court. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984); *see also PPG Indus. Inc. v. Jiangsu Tie Mao Glass Co. Ltd*, 47 F.4th, 156, 160 n. 10 (3d Cir. 2022).
[7] Citations to TX are to the unofficial transcript of the May 21, 2025, damages hearing.

states that he took it before the incident. TX, p. 5, ¶ 18, p. 12, ¶¶ 20-25. He states he can barely sleep because he is afraid that other correctional officers will attack him, even though he is now housed in a different jail. TX, p. 5, ¶¶ 19-21. He states that he has other post-traumatic symptoms such as when he is put in hand-cuffs he "freaks out" because he was in handcuffs when Defendant Porborsky attacked him. TX, p. 5, ¶¶ 23-25.

Plaintiff stated that he is classified as an inmate with a "severe mental health" diagnosis. TX, p. 6, ¶¶ 19-22. He also stated that before the incident he was medicated for certain mental health issues but he was not definitive of his diagnoses or medications. TX, p. 7. He said, though, that his prescribed medicine was to help him with his anxiety. TX, p. 8, ¶ 6. Plaintiff sees psychiatry for help with his night terrors and he was provided with an increased dosage of medication to help control the night terrors. TX, p. 15, ¶¶ 15-21. He has monthly sessions with mental health professionals, TX, p. 16, ¶¶ 3-14, and is housed on the residential treatment unit of SCI-Greene that is specially segregated for prisoners with mental health issues. TX, p. 17, ¶¶ 1-9. Plaintiff was not on a mental health unit in SCI-Houtzdale. TX, p. 17, ¶¶ 14-22.

As to physical injuries, Plaintiff stated, that right after the attack it was difficult to swallow food or drink for about 2-3 days. TX, p. 10, ¶¶ 17-18. It felt like strep throat. TX, p. 11, ¶¶ 21-22. As to continuing physical injuries Plaintiff stated, "Sometimes it's hard to like swallow. When I have to take a deep, deep swallow, there is no damage or anything, but he pressed pretty hard on my neck. It kind of – I'm sorry. I'm a little like irritated. They were going to give me – my blood pressure is rising right now because its bringing back memories." TX, p. 6, ¶¶ 1-6. Plaintiff had no neck injuries before the incident. TX, p. 6, ¶¶ 11-16. Plaintiff describes the ringing in his ears as

> I get pressure to the neck, I guess it's connected to your eardrum somehow. And sometimes when I'm sitting down, and it's real quiet, I get like a sharp high-pitched

ring. I've never had that before, before that, before that incident. But a high-pitched ring and it feels like my ear is clog [sic] when it rings, it like – it's like I heard a siren, but it's like low frequency. It's difficult to explain.

TX, p. 13, ¶¶ 4-11. Plaintiff experiences this ringing when he wakes from night terrors and it often causes headaches. TX, p. 13, ¶¶ 15-18, 19-22. Plaintiff described his night terrors as follows.

Well, obviously when I'm sleeping, it's him standing next to me and the way I explained it to you before, but he's like -- he's a bigger person, bigger than he really is, and his hand, like, it wraps around my whole neck. And somehow -- the more and more the night terrors go on, the tighter that the grip gets and feels like he's like smashing my brains inside or something like that. And it's causing me to have like -- when I wake up, I have headache, bad headaches. There's ringing. I have to sit up because if I don't, it gets worse. It's not very pleasing.

TX, p. 14, ¶¶ 4-13. He stated the night terrors occur 5 times a week. TX, p. 14, ¶¶ 14-17. The night terrors can cause him to shake. TX, p. 14, ¶ 18.

When asked how Plaintiff came to the damages amount of $300,000 he stated, "I chose it because if the COs were not there, I believe he would have killed me. I think it's fair because if they weren't there to stop him, I believe I wouldn't be sitting here with you today. And's it's because of the other COs. And the reason why I chose that, because that's a small amount compared to my life being taken." TX, pp. 19-20, ¶¶ 24-25, 1-4.

Having thoroughly considered the case, the Court enters default judgment against Defendant Poborsky in the amount of $5,000.00 in compensatory damages. In awarding this amount, the Court considers the physical pain of the incident but acknowledges that there is no lasting physical disability due to the trauma. Instead, the Court focuses on the emotional trauma that Plaintiff suffered and the changes in Plaintiff's mental health after the incident. *See cf.* *Turkovich v. Sally Beauty Supply LLC*, No. 2:20-CV-00694-NR, 2020 WL 7059563, at *3 (W.D. Pa. Dec. 2, 2020) (citing *Gagliardo v. Connaught Labs., Inc.*, 311 F.3d 565, 573-74 (3d Cir. 2002) ("The testimony demonstrated the effects of the mental trauma, transforming Gagliardo from a

happy and confident person to one who was withdrawn and indecisive. ... [T]his evidence establishes a reasonable probability that Gagliardo incurred the emotional damages[.]")). Ms. Turkovich presented evidence that her pre-existing mental-health conditions were exacerbated when she was fired, and that she experienced significant depression ever since. The Court found defendant was liable for exacerbating Ms. Turkovich's mental-health conditions and awarded Ms. Turkovich $2,500.00 in compensatory damages. *See Turkovich*, 2020 WL 7059563, at *3. Finally, in this case, the Court notes this incident occurred while Plaintiff was incarcerated, therefore, no medical costs were incurred nor were lost earnings realized. *See Thompkins v. Belt*, 828 F.2d 298, 301 (5th Cir. 1987).

The Court enters default judgment against Defendant Poborsky in the amount of $10,000.00 in punitive damages. "Punitive damages in § 1983 cases are available when an individual defendant has acted with a "reckless or callous disregard of, or indifference to, the rights and safety of others." *Carroll v. Lancaster Cnty.*, 301 F. Supp. 3d 486, 514 (E.D. Pa. 2018). The Court finds an obvious display of reckless and callous behavior by Defendant Poborsky in complete disregard to the rights and safety of others. The Court's finds a punitive damages award of $10,000.00 is a proper award reflective of the facts here.

Finally, Defendant Poborsky is to incur the cost of the transcript produced for the evidentiary hearing.

## III.    Conclusion

The Court will enter judgment for Plaintiff and against Defendant Poborsky in the amount of $15,000.00 plus the cost for the production of the transcript of the default hearing held on May 21, 2025. Plaintiff's Motion to Appoint Counsel (ECF No. 108) is dismissed as moot. An appropriate Judgment Order shall be entered.

Date: March 16, 2026

Stephanie L. Haines
United States District Judge

DANIEL WERNER
LG 1134
SCI GREENE
169 PROGRESS DRIVE
WAYNESBURG, PA 15370
PRO SE